IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                    :        CASE NO. 09-00515 (ESL)

HURRICANE TECHNOLOGICAL
SYSTEMS, CORP.         :        CHAPTER 7

       Debtor             :

_____ :

## OPINION AND ORDER

This case is before the court upon Mr. José M. Monge Robertin, CPA, CIRA and Monge Robertín & Co.'s (hereinafter referred to as "Mr. Monge") motion for reconsideration of a court order (Docket No. 132) whereby Mr. Monge's application for compensation (Docket No. 99) was stricken in its entirety as requested by the Chapter 7 trustee (Docket No. 142). The Chapter 7 trustee argues that Mr. Monge's application for compensation should be stricken in its entirety based on the following: (i) fees, if any, prior to March 2, 2009 (date in which application for employment was approved) should not be approved; (ii) the application is overly excessive and fails to benefit Debtor's estate in conformity with Section 330(a)(4) of the Bankruptcy Code; and (iii) Mr. Monge complies with the definition of a bankruptcy petition preparer pursuant to Section 110 of the Bankruptcy Code, and as such failed to sign the schedules (Docket Nos. 112, 132, 137 & 166). For the reasons stated herein, Mr. Monge's fees in invoice #7467 are stricken in their entirety, and fees charged in invoice #7468 are partially stricken, as the effective date of employment pursuant to Fed. R. Bankr. P. 2014(a) and P.R. LBR 2014-1(e) was February 27, 2009. The professional fees charged in invoice #7468, #7469, #7470, #7471 and #7472 are reduced or denied in conformity with Section 330(a)(3) and (4) of the Bankruptcy Code.

### Facts and Procedural Background

Hurricane Technological Systems, Corp. (hereinafter referred to as "Hurricane" or "Debtor") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on January 29, 2009. On February 27, 2009, Debtor filed the application for leave to retain Mr. Monge, CPA. CIRA and Monge Robertin & Co., as insolvency and restructuring advisors particularly for "...services [which]

are required in the reorganization process of the Debtor in the areas of Plan Development, feasibility, negotiations, investment and financing," due to Mr. Monge's "extensive experience in bankruptcy cases and his understanding of the complex matters pertaining to this case." (Docket No. 12, pgs. 1 & 2). The engagement letter was included as part of Mr. Monge's employment application which stated that they would "provide specialized restructuring and insolvency services as well as consulting in the areas of accounting, tax, systems and financial matters" to reorganize Debtor (Docket No. 12, p. 6). The engagement letter detailed the services to be performed as part of the engagement. Amongst the services the following were included: (i) assist legal counsel in preparation and amendments of Chapter 11 schedules; (ii) assist legal counsel in preparation and amendments of the Statement of FinancialAffairs; (iii) assist legal counsel to obtain the financial information required by U.S. Trustee's Office for Initial Debtor Interview and 341 meetings; (iv) assist [external] auditors to complete the audit and tax returns; (v) prepare cash flow projections with our report and notes; (vi) assist counsel to develop drafts on the Disclosure Statement and plan; (vii) preparation of feasibility analysis for confirmation of the Plan; (viii) reconcile claims, classify in accordance with the Code and design strategies for a Reorganization Plan; (ix) prepare liquidation analysis with our accountants report and notes; (x) review tax and other proof of claims to recommend and support claim objections; (xi) assist Debtor in preparation of monthly operating reports (MORS) required by the guidelines of the Office of the U.S. Trustee. Review all MORS prepared by Debtor; (xii) if necessary, we will assist Debtor in developing internal systems and procedures to facilitate reporting and control of the operations; (xiii) if necessary assist with industrial engineer to review costs and processes; (xiv) assistance to obtain additional capital contributions or DIP financing; (xv) assistance to legal counsel in any adversary proceedings that may arise in the course of the reorganization that may require financial and accounting support or testimony; (xvi) assistance to legal counsel and Debtor in any negotiations with creditors or post-petition financing; (xvii) other financial and management consulting to improve financial conditions; (xviii) assist counsel and Debtor to organize dockets, proof of claims and other documents to reduce electronic filing costs and provide efficient access to documents; (xix) assist counsel to tabulate ballots and preparation of draft of 1129 statement; (xx) prepare Substantial Consummation Report to request Final Decree; and (xxi) any other support

requested by counsel or Debtor (Docket No. 12, pgs. 6 & 7). On March 2, 2009, the court approved Mr. Monge's and Monge Robertin & Co.'s application for employment but noted that the same failed to include the required statements in accordance with P.R. LBR 2014-1(a)(5) and (6) (Docket No. 14). On May 5, 2009, Mr. Monge filed an informative motion on P.R. LBR 2014-1 noting the following: (i) no opposition as of this date has been filed by the Office of the U.S. Trustee; (ii) "[t]he attached copy of the Verified Statement filed as part of Docket No. 12 includes in page 2 (b) a statement in compliance with LBR 2014-1(a)(6); and (iii) "[a]s to LBR 2014-1(a)(5), the Debtor did not provide any deposit and therefore we understand that this rule does not apply." (Docket No. 32).

The 341 meeting of creditors was held on March 9, 2009, and was continued *sine die* pending the filing of amended schedules and documents requested by the Office of the United States Trustee (Docket No. 19). On March 27, 2009 a status conference was held in which Debtor was given until May 30, 2009 to file the Disclosure Statement and Plan of Reorganization (Docket No. 25). Subsequently, on June 8, 2009 the court ordered Debtor to show cause within thirty (30) days as to why this case should not be dismissed for failure to file amended schedules, monthly operating reports, disclosure statement and plan of reorganization (Docket No. 40).

On June 19, 2009, the Office of the United States Trustee filed a motion for conversion to Chapter 7 pursuant to 11 U.S.C. §1112(b)(4)(E), (F), (H) and (J) of the Bankruptcy Code and for Debtor's alleged breach of its fiduciary duty in refusing or delaying to file an avoidance action pursuant to Section 548 of the Bankruptcy Code (to avoid fraudulent transfers of estate property to other corporations and/or individuals) (Docket No. 43). The U.S. Trustee in its motion to dismiss included a copy of the Asset Purchase Agreement between Export National, Inc.[1] and Debtor which was executed on October 4, 2007 (Docket No. 43, Exhibit B). In the Asset Purchase Agreement,

---

[1]Export National, Inc. (case number 03-01827) filed for bankruptcy on February 25, 2003. On May 6, 2003 the court granted Mr. Monge's application for employment as financial insolvency and restructuring advisors for Export National, Inc. (Docket Nos. 18, 22 & 37). Export National, Inc. was a closely held company dedicated to the distribution of aluminum materials to manufacturers at the wholesale level, particularly supplies employed in the construction of windows and doors (Docket No. 95, pgs. 5-6 of Disclosure Statement). In this particular case, Mr. Monge's last application for compensation was on January 28, 2005 (Docket No. 159). The court confirmed Export National, Inc's amended plan of reorganization on February 15, 2005 (Docket No. 162).

3

Debtor (as the buyer) would purchase from Export National, Inc. (as the seller) certain assets, namely raw materials, used equipment and machinery used for manufacturing aluminum windows and doors as well as a trademark which was employed by National Export, Inc. (Docket No. 43, Exhibit B, pg. 21). One of the clauses of the Asset Purchase Agreement states the reason for the same was that, "...due to serious financial difficulties that lead to insolvency and in the best interest of the Seller's creditors and employees, the Seller decided to follow an orderly liquidation by selling, transferring and conveying to the Buyer certain assets, in exchange for the Buyer to absorb and assume certain liabilities and to rescue employment of all former employees of Seller" (Docket No. 43, Exhibit B, pg. 21). On July 10, 2009, the Debtor filed its opposition to the U.S. Trustee's motion for conversion to Chapter 7 and its request for voluntary dismissal (Docket No. 48). Debtor in said opposition clarified certain facts which are pertinent to the instant controversy, namely: (i) "[i]t is further clarified that Debtor has an in-house accountant, Mrs. Jenny Santana. Mrs. Santana is in charge of all accounting matters of the Debtor and the preparation of Monthly Operating Reports. The financial advisors provide support to the accountant when necessary in all matters pertaining the reorganization"(Docket No, 48, paragraph # 3); (ii) "[w]hat was in fact stated in the 341 meeting was that Export National's primary reason for the sale of assets to [Hurricane Technological Systems, Corp.] was due to inability to further develop the company for lack of financing. Financing was not available due to Export's bankruptcy, and that its president, Mr. Manuel Gandara had also filed for bankruptcy subsequently due to personal problems" (Docket No. 48, paragraph #11); and (iii) "...Debtor has failed to file its Monthly Operating Reports since the date of filing. This averment is admitted, however, the reason for this delay has been that debtor's accountant, Mrs. Jenny Santana was ill and suffered a serious automobile accident. She has recently returned to work and is expected to complete the Monthly Operating Reports from February to May 2009 within 20 days. The Operating report of February 2009 has already been provided to the Debtor's financial advisors for their review" (Docket No. 48, paragraph #30).

On August 27, 2009, Debtor filed a motion requesting conversion to Chapter 7 (Docket No. 67). Subsequently, on August 28, 2009 Mr. Monge filed a motion withdrawing as Debtor's financial advisor due to the conversion to Chapter 7 (Docket No. 73). The instant case was converted to

4

Chapter 7 on September 1, 2009 (Docket No. 71).

On October 14, 2009, Mr. Monge submitted his application for compensation for the period of January 9, 2009 to June 30, 2009 in the amount of $29,779.75, 282.80 hours and expenses in the amount of $240.03, for a total reimbursement amount of $30,019.78. (Docket No. 99). The figure in the amount of $29,779.75 includes a 30% discount. On December 22, 2009, the Chapter 7 Trustee filed a motion objecting to Mr. Monge's application for compensation in its entirety since the same was overly excessive and did not benefit the estate (Docket No. 112). The Chapter 7 Trustee also argued that fees, if any, prior to March 2, 2009 should not be approved. The Chapter 7 objection to Mr. Monge's application for compensation is based particularly on the following: (i) 60.90 hours which amount to $9,455 (without the 30% discount) were spent preparing schedules which should have been completed by an internal accountant working closely with the bankruptcy attorney; (ii) 48.40 hours which amount to $7,465 (exclusive of the 30% discount) were dedicated in the preparation of the initial debtor interview ("IDI") which should have been prepared by Debtor's attorney in conjunction with its internal accountant; (iii) 27 hours which amount to $4,050 (exclusive of the 30% discount) was billed in the preparation of monthly operating reports which were never filed with the court; (iv) 39.50 hours which amount to $5,925 (without the 30% discount) were dedicated in the summary of claims and claims administration but no objections to the claims were ever filed with this court; (v) 20.60 hours were dedicated in preparing Debtor for the 341 creditors' meeting which amounts to $3,690 (exclusive of the 30% discount) which should have been done by Debtor's internal accountant which has extensive knowledge regarding Debtor's financial affairs; (vi) the application for employment does not disclose that Mr. Monge had any prior knowledge of Debtor's financial affairs; and (vii) Mr. Monge in the 2014 Statement of Application for Employment indicated under penalty of perjury, that there is no prior connection with the Debtor (Docket No. 112). On November 30, 2009, Mr. Monge filed his response to the Chapter 7 Trustee's objection to his application for compensation alleging the following: (i) CIRA's ("Certified Insolvency and Restructuring Advisors") services include the preparation of Schedules since "...we are able to access and understand the books of the Debtors and produce more accurate Schedules at a lower cost;" (ii) Debtor's internal accountant was unable to assist us significantly in the preparation and amendment

of the schedules due to serious health problems; (iii) "[i]n all our Chapter 11 cases we are involved in producing the IDI documents for counsel. In this process we visit the Debtor's offices, provide the list of documents to the internal accountant, review the documents to ascertain they are what is requested. In this particular case the Debtor's internal accountant was sick and was single handedly working most of the accounting procedures of the company and needed additional assistance in order to comply with all documentation requested by the US Trustee's Office;" (iv) "[t]he operating report work included visiting the Debtors offices and multiple telephone conferences to provide formats and assistance to the Debtor's internal accountant. The monthly operating report for the month of February (which would include the last two days of January 2009 could not be filed because the internal accountant was unable to produce the appropriate information. Time expended involved the initial meetings and telephone calls with the accountant to provide assistance to understand the forms and attachments needed and review of the initial data provided;" (v) the summary of claims work involves: (a) "...imputing all scheduled amounts and Proofs of claims in a worksheet (the summary of claims and plan payments) that reconciles these balances, provides status on all POC's reviewed, and calculates the expected amount to be allowed and payments for all creditors;" (b) "[i]n the summary of claims and plan payments we had already identified POCs to be allowed, and those recommended for objection;" (c) "the summary work also includes reconciling the Proofs of Claim registered in the Claims Register of the Court with the POCs themselves and the amounts posted to the summary as POCs;" and (d) "[d]iscrepancies must be reviewed and explained;" (vi) Debtor had two (2) meetings of creditors (February 28, 2009 and March 9, 2009) that required prior meetings with Debtor and counsel as well as assistance to produce documents requested by the Office of the US Trustee; (vii) in the IDI Debtor testified that Mr. Monge had been involved as Debtor's financial consultants prior to the bankruptcy filing; (viii) "[a]s to the issue of 'benefit to the estate' all procedures were for the sole purpose of developing a reorganization plan in good faith;" (ix) the verified statement (Docket No. 12) filed with this court disclosed that Mr. Monge had provided professional consulting services to Debtor prior to filing its bankruptcy petition; (x) the application for employment was filed on February 27, 2009 (Docket No. 12) "due to delays on the approval and signing by the shareholders [on January 31, 2009] and filing by counsel [on February 27, 2009] for

6

Debtor because we do not have access to electronic filing," thus, "[t]he period that would not be covered under [P.R. LBR 2014-1(e)] is from January 9 to February 13, 2009;" (xi) Mr. Monge citing the case of In re Trafalgar Enterprises Inc. (Case # 04-09288, Docket No. 200) alleges that extraordinary circumstances are present in this case because the filing was unreasonably delayed by Debtor; and (xii) the Chapter 7 Trustee's objection fails to address/object to compensation related to the following areas: (a) accounting; (b) business operations; (c) case administration; (d) case evaluation; (e) filing; (f) liquidation analysis; (g) plan and disclosure statements; (h) planning; (i) statement of financial affairs; (i) travel time; (j) tax issues; and (k) expenses which add up to 131.8 hours and amounts to $19,210.50 in fees and $240.03 in expenses (Docket 115).

On December 22, 2009, the court issued a Notice of Hearing informing the parties that a hearing would be held on March 1, 2010 to consider the following: (i) Mr. Monge's application for compensation (Docket No. 99); (ii) Chapter 7 Trustee's opposition (Docket No. 112) and Mr. Monge's response (Docket No. 115) (Docket No. 120). The hearing was held on March 1, 2010 but Mr. Monge failed to appear (Docket No. 132). The court ordered for Mr. Monge's application for compensation (Docket No. 99) to be stricken for the reasons included by the Chapter 7 trustee in her written objection (Docket No. 112) and the oral reasons she stated at the hearing (Docket No. 137). As part of its findings to support its decision the court noted the following: (a) a number of entries lack sufficient detail to put the court, the creditors, and parties in interest in a position to determine whether the amounts being claimed are reasonable; and (b) the record fails to show that action was taken as claimed in the application for compensation such as performing claims review when there were no objections to the plan; work performed on a liquidation analysis which was not submitted; and the filing of monthly operating reports which do not appear on the record (Docket No. 137, pgs. 8 & 9).

On March 8, 2010, Mr. Monge filed a motion requesting ten (10) days to file a motion of reconsideration (Docket No. 134). On March 12, 2010, the court granted the motion filed by Mr. Monge requesting additional time to file the motion for reconsideration (Docket No. 135). On March 29, 2010, Mr. Monge filed a motion for relief from order pursuant to Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b) and a memorandum of law in support of the same by which he argues that after

carefully reviewing the transcript of the hearing the Chapter 7 Trustee brought new arguments which were not included in her written objection (Docket No. 112) filed with this court (Docket Nos. 142 & 143).

Subsequently, on June 30, 2010 the court issued an Order and Notice (Docket No. 155) scheduling a hearing for August 13, 2010 to consider Mr. Monge's motion for relief of order and the legal memorandum in support of the same (Docket Nos. 142 & 143). The court informed Mr. Monge that a hearing had been scheduled as a matter of due process because in the motion it is alleged that rulings were made in open court based on allegations that were not included in the written motion filed by the Chapter 7 Trustee (Docket No. 166). At the hearing, Mr. Monge testified that he was involved in this case because he had previously worked on the reorganization of Export National. He also stated that the feasibility of Debtor's reorganization was tied to a capital injection of approximately half a million dollars from an undisclosed investor. However, "at a point in time" the investor "started to give signs that he really wasn't going to be able to put in the money" (Docket No. 166, p. 12). Mr. Monge explained that in this case, "the principal problem in the whole process was the fact that the comptroller (Jenny Santana) was sick and was not available all the time" and that "to produce the data, we normally try to request all the information from the Debtor so that we can actually process it and not have to go in and review the schedules in such detail, but in this case, we had to go in and produce information, because there had been changes in the amounts paid" (Docket No. 166, pgs. 13-14). Following is a summary of Mr. Monge's testimony which for clarity's sake has been categorized by the type of professional service provided to the estate.

**Schedules & Statement of Financial Affairs**

Mr. Monge stated that prior to filing the bankruptcy petition, his professional corporation made a preliminary evaluation of the case and was involved in the actual filing process, which Debtor paid prepetition. However, subsequent to the petition there were significant changes in the schedules. Mr. Monge informed the court that he does not prepare the schedules himself, but that his office staff use the program Easy-Filing to prepare the schedules for the clients. In this particular case, "CPA Samuel Pérez which was in charge of the case, and he would recollect the information necessary in the case, and either he would input the data or give somebody the data to be inputted" (Docket No.

8

166, pg. 19).

Mr. Monge further stated that in bankruptcy cases, they prepare and review the documentation, and have Debtor and Counsel review the same and the latter files its (Docket No. 166, p. 25). Mr. Monge testified that he was not a bankruptcy preparer pursuant to Section 110(a) of the Bankruptcy Code since he provides financial advice and litigation support and is engaged by the Debtor not the attorney.

**Disclosure Statement**

Mr. Monge testified that they started a template of the disclosure statement "and subsequent to that, we actually put in additional time" but the same was never filed due to the conversion of the case to Chapter 7 (Docket No. 166, p. 16).

**Monthly Operating Report (MOR)**

Mr. Monge stated that they invested over twenty (20) hours working on the MORs and that some drafts were given to the Debtor with notes of things that had to be changed (Docket No. 166, pgs. 16-17).

**Initial Debtor Interview (IDI) & Meeting of Creditors**

Mr. Monge stated that as part of the Debtor preparation for the IDI they explain to the Debtor the guidelines of the Office of the U.S. Trustee, prepare initial Debtor's interview checklist, commence preparation of documents required by the Office of the U.S. Trustee. He also explained that attorneys prefer for them to engage in the guidelines process because they are able to explain better how the books are closed and how to deal with specific situations that arise when you close your payroll account and credit card links that you have to transfer to new accounts (Docket No. 166, p. 35).

**Liquidation Analysis**

Mr. Monge explained that the liquidation analysis is one of the core analysis CIRAs are best qualified to perform since CIRAs have been trained to understand better the implications of a liquidation analysis to develop a liquidation analysis that is more complete (Docket No. 166, p. 32).

**Investment Strategies & Complex Matters**

Mr. Monge testified that they were not involved in developing investment strategies for

Debtor or the amounts that were going to be invested or in the negotiations with the investors. Their participation was limited in assisting the comptroller in the preparation of cash flows for a meeting with investors (Docket No. 166, p. 38). Mr. Monge stated that in this particular case they had a manufacturing concern and the same was complex because of its cost basis. He also stated that, [t]here were several very, very distinct strategies to develop the company in conjunction with other companies that were going to work together to market new products." (Docket No. 166, p. 63).

**Claims Administration & Review**

Mr. Monge explained that the claims analysis process entails preparing a "basic operating worksheet" to "reconcile the scheduled amounts and all amendments and to schedules so that we can know that the amended schedule is correct" (Docket No. 166, p. 48). Then all the proofs of claims are included in the worksheet to be able to identify any differences between the proof of claims and the scheduled amounts. The claims are analyzed by a CPA to determine if it is a proper claim. The debtor then proceeds to identify those differences and if it's a technical matter, such as a tax issue the same is referred to our tax specialist. The attorney receives a summary of claims which has been analyzed and the attorney can focus on the legal aspects of the case. Once the deadline for filing the proofs of claims has elapsed, we prepare a report to counsel for claim objections which includes the reason as well as the evidence for such objection (Docket No. 166, pgs. 48-49). In this case the report for claims objections was never prepared.

**Case Administration**

Mr. Monge explained that his staff reviews the pacer system to check on all dockets and proof of claims that are filed because from past experience counsel did not refer the proofs of claims and at the end of the case we had to redo a plan that was prepared without taking into consideration a particular proof of claim (Docket No. 166, p. 55).

Applicable Law & Analysis

*Fed. R. Bankr. P. 2014(a) & P.R. LBR 2014-1(e)- Post Facto Authorization for Employment*

Fed. R. Bankr. P. 2014 provides,

"[a]n order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to §327, §1103, or §1114 of the Code shall be made only on application of the trustee or committee. The application shall be filed and, unless the

10

case is a chapter 9 municipality case, a copy of the application shall be transmitted by the applicant to the United States Trustee. The application shall state the specific facts showing the necessity for employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Fed. R. Bankr. P. 2014(a).

P.R. LBR 2014-1(e) provides the following regarding the effective date of the application for employment,

"[i]f the court approves an application for the employment of a professional person, the approval is deemed effective as of the date of the filing of the application, However, if the application is filed within fourteen (14) days of either the commencement of the case or the date the professional first rendered services–whichever is later– court approval is deemed effective on the date that the services were first rendered. The court will not grant otherwise retroactive approval, absent extraordinary circumstances." P.R. LBR 2014-1(e).

A bankruptcy court's discretion to approve a *post facto* employment application is circumscribed to the applicant satisfying the following; (1) that the employment satisfies the statutory requirements, and (2) that the delay in seeking court approval resulted from extraordinary circumstances. In re Jarvis, 53 F. 3d 416, 418 (1st Cir. 1995). Mere oversight or inadvertence does not constitute an extraordinary circumstance. Id; See Butler v. Indiano (In re Ponce Marine Farm, Inc.), 259 B.R. 484, 493 (D. P.R. 2001)

In the instant case, the application for employment was filed on February 27, 2009 and approved on March 2, 2009 (Docket Nos. 12 & 14). Thus, under P.R. LBR 2014-1(e), the same would be deemed effective as of its filing date, given that the same was not filed within fourteen (14) days of either the commencement of the case (January 29, 2009) or the date the professional first rendered services (January 9, 2009). The Debtor's president, Mr. James Colón de Jesus, certified that he had read the application to the best of his knowledge on January 31, 2009, two (2) days after the Debtor filed its bankruptcy petition (Docket No. 12, p. 3). The court granted Mr. Monge's application for employment on March 2, 2009, but noted that the same failed to include the statements in P.R. LBR 2014-1(a)(5) and (6) (Docket No. 14). On May 5, 2009, Mr. Monge filed an informative motion on Rule 2014-1 whereby he explains that he has complied with P.R. LBR 2014-1(a)(5) and (6) (Docket

No. 32). Thus, the first prong of the test articulated in In re Jarvis is not in controversy, namely the suitability of the applicant's appointment, given that the court authorized Mr. Monge's employment as of February 27, 2009.

The factors a court may consider to determine whether the delay in seeking court approval resulted from extraordinary circumstances are the following: (i) whether the applicant or some other person bore responsibility for applying for approval; (ii) whether the applicant was under time pressure to begin service without approval; (iii) the amount of delay after the applicant learned that initial approval had not been granted; and (iv) the extent to which compensation to the applicant will prejudice innocent third parties. In re Jarvis, 53F. 3d 416, 420-421 citing F/S Airlease II v. Simon, 844 F. 2d. 99,105-106 (3d. Cir. 1988), cert. denied, 488 U.S. 852, 109 S. Ct. 137, 102 L. Ed. 2d 110 (1988)). Mr. Monge only touches upon the first factor, which is discussed herein in more detail.

On October 14, 2009, Mr. Monge filed the first application for interim compensation and reimbursement of expenses for the period of January 9, 2009 to June 30, 2009 (Docket No. 99). Thus, Mr. Monge is seeking compensation for services rendered pre-petition (January 9, 2009- January 28, 2009) as well as retroactive approval for services performed post-petition. Mr. Monge in his answer to the objection to the application for compensation argues that his application for employment falls under the extraordinary circumstances exception, due to the first factor, namely; (i) delays caused in obtaining the necessary shareholder approval and filing through the office of counsel for the Debtor, since they are unable to file electronically because they are not attorneys; (ii) the application for employment was signed on January 31, 2009 and the same was filed by counsel on February 27, 2009; and (iii) "[w]e understand that extraordinary circumstances apply and the Court could approve the appointment as of the filing date. In addition the Court has ruled in the case of Trafalgar Enterprises Inc. (Case #04-09288 (ESL), dkt #200) that the application was effective the date in which the engagement was signed because the filing was delayed unreasonably by the Debtor. In this case the Court states: 'the professional should not be penalized for Debtor's failure to file the formal application before the Court at a subsequent date.'"(Docket No. 115, p. 8).

Mr. Monge's first argument regarding a delay in obtaining the necessary shareholder approval is contradictory, given that Mr. Monge states that the application for employment was signed on

January 31, 2009, merely two (2) days after Debtor's bankruptcy filing. Mr. Monge's second argument is that the application for employment was filed tardily due to Debtor's counsel's fault. However, Mr. Monge could have filed his application for employment in paper on his own behalf pursuant to P.R. LBR 1005-1. "Although the more common practice is for the trustee, debtor in possession or committee to file the application as the client, the professional may, and in some instances must, file the application on its own behalf." Allan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy ¶2014.02 (15th ed. rev. 2010). Moreover, it is the professional's responsibility, particularly if he or she has rendered professional services to debtors in bankruptcy proceedings in the past, to adhere himself or herself to the requirements of Fed. R. Bankr. P. 2014 and P.R. LBR 2014. ("Compliance with Rule 2014 is ordinarily the responsibility and burden of the professional absent a showing that the professional is 'a person, completely ignorant of the requirement of the Bankruptcy Code and without legal representation, [who] justifiably relied on the superior expertise of another.'" Id at ¶2014.07 quoting F/S Airlease II, Inc. v. Simon, 844 F.2d 99, 107 C.B.C. 2d 959, 963 (3d. Cir. 1988), cert. denied, 488 U.S. 852, 109 S. Ct. 137, 102 L. Ed. 2d 110 (1988)).

Mr. Monge argues that in the case of In re Trafalgar Enterprises, Inc., this court held that the employment application would be effective from the date in which the engagement was signed, given that, "[t]he professional should not be penalized for Debtor's failure to file the formal application before the Court at a subsequent date." (Case No. 04-09288, Docket No. 200, p. 17). This court has reviewed the Trafalgar Enterprises, Inc. case and notes that according to the docket it was Mr. Monge, not the debtor's attorney, who filed both a hard copy application for employment as well as a hard copy application for compensation, given that both were duly stamped (Case No. 04-09288, Docket Nos. 85 & 177). However, it must be noted that Mr. Monge in his answer to the objection to fees by the Debtor (which he filed in paper format) (Case No. 04-09288, Docket No. 193) in the Trafalgar Enterprises, Inc. case explained that the delay in filing the application for employment which was filed on July 7, 2005 (for professional services rendered from May 18, 2005 through November 30, 2005) was due to the transition to e-filing and a misfiling of documents that required a new set to be prepared in order to file the originals (Docket No. 193, pgs. 1-2). Moreover, in the instant case, Mr. Monge filed a hard copy application for compensation on October 14, 2009 (Docket No. 99). The

court further notes that in Mr. Monge's application for compensation, as part of invoice #7468, there is an entry under the heading "case administration," dated 02/27/09 by MO (María Oquendo) which reads in the following manner, "Scan insolvency & restructuring, application for leave and verified statement signed by client and send via e-mail to legal counsel for filing." (Docket No. 99, p. 16). The court finds that this description is inconsistent with Mr. Monge's allegation attributing the tardy filing of the employment application to Debtor's counsel.

The court concludes that Mr. Monge's arguments for retroactive approval of his application for employment do not establish extraordinary circumstances because they all hinge upon Mr. Monge's tardiness. Thus Mr. Monge's effective date of the application of employment is February 27, 2009, the date when it was filed. It is ultimately the professional's responsibility to duly file his or her application for unemployment. Consequently, invoice #7467 for the month of January 2009 is stricken completely and invoice #7468 for the month of February 2009 is partially stricken with exception of the entries dated on and after February 27, 2009, which amount to $1,957.50 (without the 30% discount) and expenses of $26.70.

*Bankruptcy Petition Preparer- 11 U.S.C. §110(a)*

Section 110(a)(1) defines a bankruptcy petition preparer as, "a person, other than an attorney for the debtor or an employee of such attorney under the direct supervision of such attorney, who prepares for compensation a document for filing." 11 U.S.C. §110(a)(1). Section 110(a)(2) defines the term "a document for filing" as, "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title." 11 U.S.C. §110(a)(2). "In the face of increasingly frequent judicial confrontations with 'typing services' that actually offered, and charged debtors for, bankruptcy related services, section 110 was enacted to remedy what was perceived to be widespread fraud and unauthorized practice of law by nonattorneys who prepared bankruptcy documents for consumer debtors." Allan N. Resnick & Henry J. Sommer, 2 Collier on Bankruptcy ¶110.01 (16th ed. 2010).

Mr. Monge fails to meet the definition of a bankruptcy petition preparer since he and his professional corporation are professionals employed by the Debtor pursuant to 11 U.S.C. §327. The entries related to the Debtor's schedules were for the review and adjustments of the schedules not

14

their initial preparation. Moreover, the Bankruptcy Schedules were revised and signed by Debtor's counsel.

*Reasonableness of Compensation and Benefit to the Estate- 11 U.S.C. §330(a)(3) & (4)*

Sections 330 and 331 as well as Fed. R. Bankr. P. 2016(a) establish the guidelines for obtaining interim or final compensation for services rendered by a professional whose employment application has been previously approved by the court. See In re C.P. Del Caribe, Inc., 143 B.R. 11, 15 (Bankr. D. P.R. 1992). Fed. R. Bankr. P. 2016(a) requires in pertinent part that, "an entity seeking interim or financial compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). The court has the duty to examine and inquire independently into the reasonableness of the fees of professionals even if there are no objections to an application for compensation. In re Chas A. Stevens & Co., 109 B.R. 853, 855 (Bankr. N.D. Ill. 1990). Moreover, the application for compensation should clearly describe and explain the services provided to the estate to enable the court to review the reasonableness of the compensation requested. Allan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶330.03[6] (16th ed. 2010). "The applications for compensation of the professional fees must be self-contained; in other words, they must be sufficiently detailed and accurate to place the court in a position to make an independent decision on the application." Butler v. Indiano (In re Ponce Marine Farm, Inc.), 259 B.R. 484, 495 (D. P.R. 2001) citing In re Fruits Int'l, Inc., 87 B.R. 769, 772 (Bankr. D. P.R. 1988) (quoting In re Matter of Perez Hernandez, 73 B.R. 329, 331 (Bankr. D. P.R. 1987); See In re Environmental Waste Control, 122 B.R. 341, 348 (Bankr. N.D. Ind. 1990)("Entries need to be specific and identify what is being done, and what it concerns, or it will be reduced or denied"). Lumping a number of activities into a single entry does not allow the court to determine whether the time spent on a specific task was reasonable, thus courts do not fully compensate professionals that engage in lumping. See Allan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶330.03[6] (16th ed. 2010). If the applicant is requesting compensation for meetings, conferences, telephone calls and correspondence, the entry, "should identify the participants, describe the subject matter of the communication and justify its necessity." In re Fruits Int'l, Inc., 87 B.R. at

773.

Section 330(a)(3) provides the court with certain factors which constitute a "reasonableness standard" to determine the amount of reasonable compensation to be awarded to a professional person for actual, necessary services rendered after consideration of the nature, the extent and the value of such services. 11 U.S.C. §330(a)(3); See In re High Voltage Eng'g Corp., 311 B.R. 320, 330 (Bankr. D. Mass. 2004). The relevant factors are the following; "(A) the time spent on such services; (B) the rates charged for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title." 11 U.S.C. §330(a)(3)(A)-(F). Section 330(a)(4)(A)(ii)(I) and (II) states in pertinent part, "the court shall not allow compensation for services that were not reasonably likely to benefit the debtor's estate; or necessary to the administration of the case." 11 U.S.C. §330(a)(4)(A)(ii)(I) and (II).

*Discussion*

This court finds that this particular case is not of a complex nature, from a business operations and reorganization standpoint. Mr. Monge testified that the feasibility of Debtor's reorganization was tied to a capital injection of approximately $500,000.00 from an unknown investor which never materialized. Moreover, Mr. Monge was familiar with Debtor's operations since he stated that he was involved in this case because of his previous participation in the reorganization of Export National, Inc. which conducted a similar business as Debtor, namely, the distribution of aluminum materials to manufacturers at the wholesale level, particularly supplies employed in the construction of windows and doors. Debtor was engaged in the business of manufacturing aluminum windows and doors and filed for bankruptcy due to a decrease in sales (Docket No. 25). The court further notes that there are several time entries in Mr. Monge's application which are indicative that this chapter 11 case

would be short lived.[2]

After perusing Mr. Monge's application for compensation, this court finds that the time entries lack detail and specificity, and many of them lump services together, which make it difficult for the court to ascertain whether the amount of time for certain tasks is reasonable. Also, there are a number of entries for meetings, conferences and telephone calls which fail to identify the participant and describe the subject matter of the communication. The court will not compensate Mr. Monge for entries which are vague and unspecific and also for the entries regarding telephone conversations, meetings and conferences which lack the necessary detail as described above. The court will not compensate Mr. Monge for professional services rendered that resulted in a working product that was never filed or submitted with this court, since the court is not in a position to adjudicate whether it was of any benefit to the estate or whether it was actually prepared.[2] However, the court will compensate Mr. Monge for 50% of the fees charged for those entries that have lumped services together without a breakdown of the time expended for each service performed. In the aggregate these services appear to have benefitted the estate. A detail follows.

*Invoice #7468*

This court finds that the following entries for fees which are dated on or after February 27, 2009 (6 entries) and pertain to invoice #7468 are vague and unspecific: (1) IDI Documentation - 02/27/09- "Review Status of IDI Documentation;" (2) Meeting of Creditors-2/28/09- "Meet with legal counsel and debtor prior to hearing;" (3) Meeting of Creditors- 2/28/2009-"Attend 341 creditors meeting."[3] The court further finds that the following entries pertaining to invoice #7468 lump several tasks: (1) IDI Documentation- 02/27/2009- "Review documentation for IDI. Checklist. Incorporate

---

[2] Invoice #7470: (1) Planning-04/22/09- "Meeting to discuss plan and difficulties encountered with continued loss of market" (JMR); and (2)Case Administration- 4/29/2009- "Telephone calls to counsel to coordinate meeting and request dismissal" (JMR) (Docket No. 99, pgs. 28 & 29).

[3]The court notes that there was only one (1) 341 creditors meeting held on March 9, 2009 (Docket Nos. 5 & 19) before this case was converted from a chapter 11 to a chapter 7.

new information provided by Debtor for IDI. Telephone conversations with Debtor's accountant, Jenny Santana to discuss IDI. Checklist package. Telephone conversations with debtor's attorney to go over IDI. Documentation sent to legal counsel for review and filing with US Trustee's Office;" (2) Case Administration- 2/27/09- "Scan insolvency & restructuring application for leave and verified statement signed by client and send via e-mail to legal counsel for filing."Thus, for invoice #7468, the court will compensate Mr. Monge in the amount of $352.63 (inclusive of the 30% discount).

Invoices # 7469, #7470, #7471 and #7472 for the period March 1, 2009 through June 30, 2009 will be discussed by the type of professional service provided to Debtor's estate.

*Amended Schedules and Statement of Financial Affairs*

The court will not compensate Mr. Monge for the alleged work rendered on the amended schedules and statement of financial affairs, because there are three (3) entries dated 03/17/09 and 03/19/2009 regarding the preparation of amended schedules and statement of financial affairs which were never filed with this court (Docket No. 99, pgs. 21 & 24). Particularly when almost three (3) months later, on June 8, 2009, the court entered an order to show cause as to why this case should not be dismissed for failure to file amended schedules and statement of financial affairs, file timely reports of operations and file disclosure statement and plan (Docket No. 40).

*Case Administration*

Under the heading of "case administration" the majority of the entries which are lumped are for review of pacer system to check, download and file on server new docket entries and proofs of claims. Over a three (3) month period, 17.40 hours were charged in fees which amounts to $1,010.45 (inclusive of the 30% discount). In this case, as of June 30, 2009 there were 59 proofs of claims filed per the claims register. The court will compensate Mr. Monge for 50% of the fees charged under this category which amount to $505.23 (inclusive of the 30% discount).

*Claims Review and Summary of Claims*

Almost all of the entries for claims review and summary of claims are vague and unspecific. The general description, "review new proof of claims filed," "review additional proof of claims filed since last update," "update summary of claims and plan payments to incorporate new proof of claims filed," "review summary of claims and plan payments and reconcile," is insufficient. The only fees

charged for claims review that this court will fully compensate is for the entry dated 4/06/2009- "review Internal Revenue Service's proof of claim 9-1; compare to scheduled amount as to correctness; note differences and mark for further discussion with debtor" which amounts to $147.00 (inclusive of the 30% discount). The only fees charged for summary of claims that this court will fully compensate is for the entry dated 04/22/2009- "telephone conversation with debtor's comptroller to discuss status of case, monthly operating report and information still missing previously requested. Make adjustments to summary of claims including amount of claims deferred, suggested terms, monthly payments" which amounts to $199.50 (inclusive of the 30% discount).

*IDI Documentation & Meeting of Creditors*

The initial debtor's interview is conducted prior to the 341 creditors meeting which in this case took place on March 9, 2009. The court is unable to ascertain from the record the actual date of the IDI. The entries under this heading are dated 03/03/2009-03/09/2009. The entries under both of these headings are vague, unspecific and repetitive (particularly the entries under the heading IDI Documentation). Moreover, many of the entries have services performed which are lumped together making it difficult for the court to ascertain their reasonableness. Thus, the court will only compensate for 50% of the fees charged for the entries under the Meeting of Creditors' heading which amount to $1,018.50 (inclusive of the 30% discount).

*Operating Reports, Liquidation Analysis, Plan & Disclosure Statement*

The court will not compensate Mr. Monge for the alleged professional services rendered on the operating reports, liquidation analysis and plan and disclosure statement, because these work products or drafts were never filed with this court or submitted as evidence to substantiate the application for compensation.

*Tax Issues, Planning, Business Operations, Case Evaluation and Claims Administration*

The court will fully compensate Mr. Monge for the fees charged which correspond to the entries under the tax issues, planning, business operations, case evaluation and claims administration headings since they provide enough detail for the court to assess its reasonableness. These entries amount to $2,289.00 (inclusive of the 30% discount).

*Travel Time & Expenses*

The court will compensate Mr. Monge fully for the travel time and the associated expenses of this particular case, which amount to $523.25 (inclusive of the 30% discount) and $240.03 for expenses, including the travel time and expenses for invoice #7468.

Conclusion

In view of the foregoing, the court finds and concludes as follows: (1) Mr. Monge's fees regarding invoice #7467 are stricken completely and fees charged in invoice #7468 are partially stricken, as the effective date of employment pursuant to Fed. R. Bankr. P. 2014(a) and P.R. LBR 2014-1(e) was February 27, 2009, and this case is devoid of exceptional circumstances which would justify post facto authorization of employment; (2) Mr. Monge is not a bankruptcy petition preparer pursuant to Section 110(a) of the Bankruptcy Code; and (3) the professional fees charged in invoices #7468, #7469, #7470, #7471 and #7472 have been reduced or denied in conformity with Section 330(a)(3) and (4) of the Bankruptcy Code. After a careful examination of Mr. Monge's application for compensation, this court concludes that Mr. Monge should be compensated in the amount of $5,035.11 in professional fees and $240.03 in expenses for a total amount of $5,931.48.

The amounts are allowed as a Chapter 11 administrative priority to be distributed in accordance to 11 U.S.C. §§726(b), 507(a)(2), and 503(b), that is, subordinated to the payment in full of the Chapter 7 administrative priorities.

In view of the foregoing, Mr. Monge's motion for reconsideration is partially GRANTED.

SO ORDERED.

In San Juan, Puerto Rico, this 20th day of January 2011.

Enrique S. Lamoutte
United States Bankruptcy Court